Martin Fick, an Infant, by Mary Fick, his Guardian ad Litem, Respondent, *v.* Metropolitan Street Railway Company, Appellant.

*Negligence — a child run over when stepping off a street car — verdict contrary to the weight of evidence.*

In an action brought against a street railroad corporation by a boy, who, while alighting from one of the defendant's cars, was thrown under it and injured, the testimony of the plaintiff, aged nine, supported only by that of his brother, aged eight, to the effect that the driver, after stopping the car at the request of the plaintiff, started it again as the plaintiff was alighting, throwing him under the wheel, was inconsistent with statements made by the plaintiff immediately after the accident, and again about a month later upon an examination of the driver before a police magistrate upon a criminal charge, and was contradicted by several other apparently disinterested witnesses, who asserted positively that the car did not stop, but that the plaintiff jumped off without notice to the driver while the car was in motion, and, having his back to the horses, was thrown down by its momentum.

*Held*, that a verdict in favor of the plaintiff should be set aside as contrary to the weight of evidence.

Appeal by the defendant, the Metropolitan Street Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of May, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 17th day of June, 1897, denying the defendant's motion for a new trial made upon the minutes.

*Charles F. Brown*, for the appellant.

*Jacob M. Guedalia*, for the respondent.

Ingraham, J.:

This action was brought to recover for injuries sustained by the plaintiff, an infant of the age of nine years and six months, in consequence of being run over by one of the defendant's cars. The plaintiff and his brother, about eight years of age, were passengers upon one of the defendant's cars. He went out upon the front platform of the car, and while attempting to alight was thrown under the car and received injuries which resulted in the amputation of his right leg.

The jury found a verdict for the plaintiff, and the only ground upon which the defendant seeks to reverse this verdict is that it is against the weight of evidence.

The plaintiff testified that he got on the car at Thirty-fourth street and Lexington avenue; that the car was going west; that he did not get a seat until the car passed Sixth avenue; that when the car got to Tenth avenue he went to the front platform and told the driver to stop; that his brother Henry was with him; that the driver stopped the car; that he (the plaintiff) then put his foot on the step and started to get off; that the car started in motion again and he was thrown off, was thrown upon his face and the wheel passed over his leg; that when he asked the driver to stop the car, it came to a full stop; that the car started before he got off, and threw him down. Henry Fick, the plaintiff's brother, who was with him on the car, testified that the car came to a full stop, and that he (the witness) then got off. Another witness called for the plaintiff testified that when he first saw the car it had stopped, and that it was about three yards from the plaintiff. The defendant called as a witness a physician in the employ of the defendant corporation, and who was in the hospital to which the plaintiff was taken the day after the accident. He testified that he spoke to the plaintiff then; that the plaintiff told him that he was getting off the front platform with his brother Henry; that he got off while the horses were going. This witness seems to have interviewed the plaintiff without any authority from any one, but simply in the interest of the railroad company. The accident happened on Decoration Day, May 30, 1895. It also appeared that the driver was arrested. His examination upon the criminal charge was before the police magistrate on the 28th day of June, 1895, and the plaintiff was also examined before the magistrate. The plaintiff there testified that he was on the car with his brother; that he (the brother) told the driver to stop the car; that the driver stopped, and his brother got off the car; that the car commenced to go again, when the plaintiff was hurt; that the car was turning the curve when the plaintiff went off, and that the car was going at the time that he (the plaintiff) fell. The defendant also called a witness who testified that he was in the car when the plaintiff, with his brother, got off; that the car was proceeding towards Tenth avenue, and just before arriving there

the car stopped and almost all the passengers left the car; that, after the bell rang for the car to start, the driver shut the door and that the plaintiff jumped up, went to the front door and out upon the front platform, and stepped off the car; that then came the crash or jolt of the car and the witness jumped out; that the plaintiff left his seat and stepped off the car after the car had started. He swore that, before the plaintiff attempted to get off, the car had gone at least twenty feet from the point at which it had stopped. The witness positively contradicts the statement of the plaintiff, that the car came to a stop while the plaintiff was on the platform, and then started again. The defendant also called a witness who was sitting in the house No. 501 West Thirty-fourth street, at the time of the accident, looking out of the window. This witness testified that the accident occurred nearly in front of the witness; that he saw the boy standing on the step pretty near half way down the hill; that he rode on the step a few feet when he jumped off and walked backwards a few steps when he fell and the car passed over him; that he got off the car with his back to the horses, and that the car was going at the time; that the car did not stop before he got off. This witness appears to have been entirely disinterested and in a position from which he could see the accident.

Another witness, who was a passenger on the car, and who got off just before the accident, testified that when she got off the car she walked towards the sidewalk; that when she got there she heard a scream, and that she then turned around and saw the plaintiff lying upon the street two or three feet behind the car; that the car had gone about twenty-five feet. The conductor of the car following the car in question testified that his car closely followed the car on which the plaintiff was a passenger; that just before getting to Tenth avenue the witness' car had to stop, because the car in front had stopped to allow the passengers to alight; that he saw the plaintiff attempt to get off the car; that he got off the car while it was in motion, and that as he was trying to get his footing he fell under the car; that the car ahead was close to the witness, the team of the witness' car being right up to the dashboard of the car ahead of him; that the witness' car was an open car; that the plaintiff jumped from the car, holding on to the rail upon the body of the car. The conductor of the car upon which the accident happened testified

that as he was going west through Thirty-fourth street he stopped at the top of the hill to let some passengers off; that he signaled the driver to go ahead, and that the car had gone about four houses from the top of the hill when the witness felt a jolt, looked on the side of the car and saw the plaintiff lying near the back wheel, and that the car then came to a stop; that the car did not stop at all from the time it stopped at the top of the hill until after the boy had been run over. The driver also testified that neither of the boys asked him to stop, nor did he stop the car; that the boys came upon the platform, and after riding a few feet he heard the plaintiff scream, and noticed him dragging by the body rail of the car; that when he screamed the driver put on the brake as soon as possible, but that before he could stop the car the plaintiff let go and fell under the car.

The plaintiff's case, therefore, depends entirely upon the testimony of these two boys, both of whom made statements immediately after the accident which, if not absolutely contradicting their testimony upon the stand, were at least inconsistent with it. The other witnesses to the occurrence, several of whom are apparently disinterested, testified positively that the car did not stop, but that the plaintiff jumped off while the car was in motion, with his back to the horses, holding on the rail upon the body of the car; and that the momentum caused by the motion of the car, he having his back to the horses, caused him to fall. If this is true it is quite clear that there was no negligence on the part of the defendant that caused the injury, but that it was solely caused by the act of the plaintiff in jumping from the car while it was in motion, with his face in the contrary direction from that in which the car was going, and which would necessarily result in his being thrown to the ground. The explicit statement made by the plaintiff and his brother, that the driver was asked to stop and did stop, and then started on again, when no such statement was made to the police magistrate at the time that the driver was before him, charged with negligence that resulted in the injury, when such a statement would have been most material in determining whether or not the driver was guilty, is certainly most suspicious; and it can hardly be conceived that these children would have recollected this occurrence several years after the accident when called upon to testify upon the trial of the action,

and not have remembered it within a month of the accident when called upon to testify before the police magistrate. It is hardly conceivable that, if the present statement is true, they should have made one inconsistent with it and which left out the one fact that would justify a recovery in this case.

The plaintiff and his brother were largely interested in the result of this trial. It is quite apparent that for the plaintiff to succeed it was necessary for him to swear that the car had stopped before he attempted to alight. He was a boy under ten years of age at the time of the accident, and something over twelve years of age at the time of the trial. The liability of a child of this age to be coached for his examination in court, to have the suggestion made to him that he should remember that the car stopped before he attempted to alight, and the inability of such a child to realize the obligation of an oath, or the consequences of his testifying to something not true, with the possibility of such a child's being influenced by the statements of those about him, and his liability to be easily induced to remember, or to think he remembers, a fact which he is told happened, and which he is told he must repeat upon the witness stand, should be considered in determining whether or not such a statement, unsupported by other evidence, and expressly contradicted by several witnesses who were present and saw just what did happen, is sufficient to sustain a verdict founded solely thereon. It is scarcely conceivable that this child, when asked about the occurrence upon his examination before the police magistrate, should not have stated that he asked the driver to stop or that the car did stop, if such was the fact. At that time it was not realized that it was necessary for him to testify to that fact in order to entitle him to a verdict.

The plaintiff was represented by his counsel before the police magistrate, and it is scarcely conceivable, if his counsel had been informed of the fact that the car had stopped, and that it was its sudden motion that threw the plaintiff off and caused the injury, that he would not have seen to it that such a statement was then made by the plaintiff. Yet several weeks after, when called upon to testify, he for the first time makes such a statement. The plaintiff thus being so interested in the result that his testimony is open to scrutiny, having, within a month of the injury, made a state-

ment in a judicial proceeding which is at least inconsistent with that made upon the stand in this case, and being contradicted by every other witness who was present and saw the occurrence, it must certainly be said that there was a very strong preponderance of evidence against the plaintiff's case. To justify our granting a new trial, upon the ground that the testimony was against the weight of evidence, it must appear from the whole testimony that the statement of the plaintiff was so overborne by the contrary evidence as to satisfy us that the verdict of the jury was not really based upon a fair consideration of the testimony, but was induced by some other feeling or consideration. This, I think, is such a case. Here there was really no evidence to sustain this verdict, except the evidence of the plaintiff, corroborated to some extent by his brother, both of them children under ten years of age. This statement, while not in itself impossible, is somewhat improbable. It is contradicted by their own statement made when the occurrence was fresh in their memory. It is contradicted by the sworn testimony of every witness to the injury who was called and examined; and then we have the fact of the age of the plaintiff and his brother, and, under the circumstances, the extreme probability that their statement was influenced or controlled by those of more mature years about them when it was realized that this fact must be sworn to to enable the plaintiff to recover.

Upon the whole case I think that this verdict was so much against the weight of evidence that it is our duty to reverse the judgment and order a new trial, with costs to appellant to abide event.

Van Brunt, P. J., Patterson, O'Brien and McLaughlin, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.